DOMINGO PIOVANETTI ET AL., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, ÁNGEL M. UMPIERRE, JUDGE, Respondent; FÉLIX MALDONADO RODRÍGUEZ, Intervener.

No. CE-63-1.    Decided June 28, 1963.

*Juan F. Ramírez Albite* and *Nicolás Torres Marrero* for petitioners. *José R. Fournier* and *Luis A. Castro* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The intervener, Félix Maldonado Rodríguez, bought an apartment house in Miramar, suburb of Santurce, Puerto Rico, one of which apartments on the ground floor was leased by the former owner to petitioners Domingo Piovanetti and María Luisa Piovanetti and devoted by the latter to a boardinghouse. As soon as intervener acquired said property, he requested the petitioners in writing to vacate the apartment because he wished to occupy it as a dwelling for himself and his family. The petitioners having refused to vacate the apartment, the intervener filed against them an unlawful detainer proceeding in the District Court of Puerto Rico, Civil Section of San Juan Part, alleging: "That plaintiff bought said property prior to the filing of this complaint for the purpose of using it in good faith, as the dwelling of his family and himself . . . That in order to prepare the apartment wholly suitable for a dwelling for his family and himself, in good faith, plaintiff requested defendants in writing, with a copy to the Economic Stabilization Administration, six months ago to vacate the part of the dwelling occupied by them and leave it at plaintiff's free disposal and, notwithstanding said request to vacate, defendants continue occupying wrongfully the use of the premises as a dwelling . . . That plaintiff, in good faith, needs the part of the dwelling that defendants occupy and wrongfully withhold."

The petitioners answered denying the facts alleged and set forth the following affirmative defenses: "Third: Plain-

tiff, on date prior to this complaint had vacated and re-leased other apartment in the two-story building situated at 710 Hoare Street referred to in the complaint, with the pre-text of devoting them for the dwelling of his family and himself; Fourth: Plaintiff recently moved into one of the apartments of the top floor of said building where he lives with his family at the present time, having repaired and painted said apartment for said purposes, and thus established his residence in said place; Fifth: That plaintiff knows and is aware of the fact that the premises occupied by defendants, because of its size and divisions, can only be used for business purposes; and that defendants have been occupying it for such business for the last five (5) years prior to the sale of the aforesaid building, and have been paying the corresponding monthly rental in advance including this month of September, 1962; Sixth: That plaintiff has and continues to lease other parts of the building described in the complaint, and it being so plaintiff does not have the intention to devote said property wholly and fully for his dwelling; Seventh: That if plaintiff's intention of devoting the property for his dwelling were true he would be seeking the eviction of other lessees which occupy another part of the building mentioned in the complaint; Eighth: That defendant does not need, in good faith, to repossess the premises occupied by defendants to devote them to the dwelling of his family and himself, the real purpose and intention of plaintiff being to evict the defendants to lease the premises occupied by them, with greater profit and monetary benefit for plaintiff."

The case having been set for October 2, 1962, the parties appeared and plaintiff, now intervener, in accordance with the statement of the case prepared by the trial judge, introduced the following evidence: The intervener testified "that the ground floor of said property, for it is a two-story building, is leased to defendant Domingo Piovanetti. On

March 7, 1962 he requested the Piovanetti family to vacate said dwelling. He says that on said date he wrote a registered letter to Piovanetti. On said March 7, date on which he sent the registered letter to Piovanetti, he sent copy of said letter to the Economic Stabilization Office. He did not receive any answer to the letter sent to Piovanetti requesting him to vacate the house, that is, the ground floor of the building. He did not receive the letter returned by the post office either . . . He further testified that he filed said complaint because he needed said premises, because he bought it without deceit for his own use . . ." On cross-examination by defendant's counsel, he continued testifying: "That he lives in the same building where the premises leased to Piovanetti are located. He lives on the top floor of the building and Piovanetti has leased the ground floor of said building. The dwelling that he (the intervener) occupies has 5 bedrooms. He is not bound to vacate said dwelling. Three rooms of his residence are occupied with furniture for which there is no room in the house. The family is composed of, he says, his wife and a granddaughter and two children. Mrs. Colón also lives with them. That his granddaughter has parents, but they are away. He says he has no minor, unemancipated children living with him . . . He further testifies that he owns another building devoted to dwellings in another place. He says that he has other houses situated in Villa Palmeras and they are leased. That he has not tried to evict the tenants of said buildings. He says that (in) the building where Piovanetti lives they have a boarding house. That in said building the only tenant is Piovanetti. He says that the ex-wife of a fellow policeman lives in his house, that she pays no rent. They look after said Mrs. Colón's children and provide a dwelling for her. Because she goes out to work. That she pays no rent at all. The witness says that he never received any answer from the Piovanettis. Later he wrote another letter to Piovanetti and begged him to vacate the premises.

Said letter is dated August 15, 1962. That he received an answer to the second letter but not to the first one. He says that the Piovanettis have another residence where they live. That they have subleased said premises. They do not occupy it. That he sent the letter to them when they were occupying it. That the Piovanettis sold the furniture to another person . . . that Piovanetti pays them a monthly rental of $140. That Piovanetti has always paid the rent. That Piovanetti had only a month-to-month contract with Dr. González. The witness says he has other properties for rental. That none of these properties constitute his home. His home is at 710 Hoare Street, Santurce. Said house on Hoare Street has two stories."

In accordance with the statement of the case, the second testimony offered in favor of the plaintiff, is the testimony of his wife, Carmen María Roche de Maldonado, who testifies that "she lives at 710 Hoare Street, Santurce, since August 22, 1962." She lives on the second floor of said building. She says that a family named Velázquez, that is, Ramona Velázquez, lives on the ground floor. She further testifies that Mrs. Colón has two children. She (the witness) has looked after them. The girl is thirteen years old and the boy ten. Mrs. Colón works in the National City Bank. The witness looks after the children. The witness testifies that they bought said property for their own use, for themselves. They bought it for whatever purposes they deem convenient for *their own business*. That she claims it in good faith without any prejudice whatsoever. The third testimony in favor of the plaintiff is Esther Colón's testimony, who states: "That she lives at 710 Hoare Street, Santurce, at the house of the Maldonados. The witness says that she has worked in the National City Bank for 19 years. She has two children, a girl 13 and a boy 10. Carmen Roche looks after them. She does not pay any rent whatsoever to Maldonado. She pays her something for taking care of her children. She has known Maldonado for

many years. On the ground floor of the building there is a boarding house, which does not belong to Maldonado. She says it belongs to Piovanetti. She does not know when Maldonado filed the complaint and that he claims it for personal use. She says that a granddaughter also lives with the Maldonados. She says that on the top floor of the house, that is, in the Maldonados' dwelling there is furniture that must be moved to another place. There is filth. They need more space to put the furniture. The witness says that she is divorced and her ex-husband lives in Mayagüez. She earns $250 a month in the bank. She has worked there for 19 years. Her children are very happy with them. She is contented with the Maldonados' treatment of her children." When the evidence for the plaintiff party was over, the defendant party announced to the court that he would not introduce any evidence, and submitted the case on the evidence introduced by the plaintiff.

In view of said evidence, the trial judge dismissed the complaint, and made the following findings: "The plaintiff, intervener herein, is the owner of other buildings situated and located in the metropolitan area which are devoted to dwellings. Plaintiff has not attempted to evict the tenants living in said buildings . . . Plaintiff was not able to prove that he was interested, in good faith, in recovering the possession of the property occupied by defendants to devote it to residential purposes for his family and himself, but rather tended to establish that defendants have subleased part of the premises sued notwithstanding the fact that it is not the ground for unlawful detainer alleged in the complaint . . . The complaint has been filed in bad faith . . . Good faith on the part of plaintiff in recovering the possession of the property to devote it to dwelling purposes for his family and himself, must be satisfactorily proved in order that unlawful detainer may prosper. In this case the court decides that plaintiff did not establish the essential elements of the

ground of unlawful detainer invoked in the complaint, for which reason the unlawful detainer requested does not lie."

Having filed a petition for review in the Superior Court, San Juan Part, the latter court reversed the judgment rendered on the following grounds: "The only controversy in this case is the question of good faith. Plaintiff is the owner of the property; he and his family occupy part of it; on acquiring it he requested that it be vacated; he granted tenant the term of six months and there was no substantial controversy as to the good faith. There is no reasonable cause for doubting (a) the witnesses for the plaintiff whose testimonies have not been contradicted. No other circumstances exist indicative of bad faith. Good faith is not presumed and the weight of the evidence as to his good faith falls on plaintiff. There is nothing to show fraud, collusion or deceit on plaintiff's part. Good faith having been supported by the evidence nothing has destroyed it."

In their petition before us, the petitioners assign three errors: Only two merit consideration. First: The respondent court erred in deciding in its judgment that plaintiff's evidence had sustained the good faith invoked in the complaint, and that there was no substantial controversy as to good faith. Second: The respondent court erred in holding that the sole controversy in the case is the question of good faith.

The law applicable thereto are §§ 12 and 12-A of the Reasonable Rents Act of Puerto Rico insofar as they provide: "Regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee, without altering any of the clauses thereof, all of which shall be deemed in force. The foregoing is applicable both to written and oral contracts and the extension shall be understood for the terms fixed by section 1471 of the Civil

Code, . . . but never for a period longer than the duration of the emergency declared . . . .

· "As exceptions to the provisions of the preceding section, the lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings only in the following cases: . . . 6. Whenever he needs in good faith the dwelling, or part thereof, for his personal use and immediate occupancy as a place of residence. (a) The lessor shall be obliged to accredit his good faith and his need of recovering the dwelling, and it shall be presumed that the same have not been accredited, without prejudice to others, in the following cases: (1) When the lessor has available.in the same locality another adequate dwelling of his own where he may establish his residence. (2) When, being domiciled in an adequate dwelling in the same locality, he is not compelled to vacate same for reasons beyond his control. (3) When at any time during the six months prior to the notice of ejectment referred to in paragraph 6(b) of this section, a dwelling of similar characteristics was vacated in a building the property of the lessor and he has not, without just cause therefor, devoted it to his own residence. (4) When during the year prior to the said notice of ejectment the lessor has sold, assigned, or leased a dwelling of his own where he resided, unless he proves to the satisfaction of the court that at the time of such transaction circumstances were such that there was no reason for him to believe that he would have the necessity of occupying the dwelling which he is now trying to recover, due to his having vacated the one which he occupied."

■ 1–2 There is no doubt that the burden is on plaintiff to prove his good faith in an action of unlawful detainer: *Roselló Hnos.* v. *Figueroa*, 78 P.R.R. 250, 258, 260 (Belaval) (1955), *aff'd*, *Roselló Hnos. Inc.* v. *Figueroa*, 233 F.2d 248, 250 (Maris) (1956). For said reason the trial judge of the District Court decided that plaintiff in the action of unlawful

detainer had not proved his good faith, notwithstanding the fact that defendants in the unlawful detainer did not introduce evidence but submitted the case on the facts established by plaintiff's examination. Upon examining the evidence it will be noticed that plaintiff considered as sufficient to establish his good faith the fact that he bought the house for his own *use*, that he notified the tenant to vacate, and that the latter has not vacated it.

However, on cross-examination other important facts were established: That plaintiff in unlawful detainer lives in the same building in a five-room apartment; he is not bound to vacate said premises because they belong to him. The main reason why he wants to evict the tenant is because three of the five rooms of the dwelling are occupied with furniture, we do not know whether they belong to his household, or furniture to establish a boarding house similar to Piovanetti's. That he has other houses leased in the same urban section.

The trial judge was right in deciding, as to said facts, that plaintiff's good faith had not been proved. Considering all the circumstances of the case, they do not present the legal situation provided in § 12-A (6) (a) of Act No. 464 of April 25, 1946, as amended by Act No. 201 of May 14, 1948.

The Superior Court of Puerto Rico, no doubt, impressed by the fact that defendants introduced no evidence whatsoever, considered plaintiff's good faith proved. An examination of the evidence shows that such decision is erroneous, for on cross-examination plaintiff established, with his own testimony, the circumstances which disprove the claim of good faith.

The judgment rendered on December 5, 1962 by the Superior Court of Puerto Rico, San Juan Part, will be reversed and the judgment rendered on October 5, 1962 by the District Court of Puerto Rico, Civil Section of San Juan Part will be left in full force and effect.